J-S22043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.D.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 355 MDA 2021 |

Appeal from the Decree Entered March 4, 2021
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 062-ADOPT-2020,
CP-21-DP-0000151-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: M.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.D.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 366 MDA 2021 |

Appeal from the Order Entered March 10, 2021
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s): CP-21-DP-0000151-2019

BEFORE: PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                    **FILED AUGUST 27, 2021**

M.D.R. (Mother) appeals from the decree and order entered in the Court

of Common Pleas of Cumberland County (orphans' court) involuntarily

terminating her parental rights to her son (Child) born in January 2014 and

_____

* Retired Senior Judge assigned to the Superior Court.

changing his goal from reunification to adoption. Counsel for Mother has filed a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), and a petition for leave to withdraw. We affirm the decree and order of the orphans' court and grant the petition to withdraw as counsel.

**I.**

**A.**

The relevant facts and procedural history of this case are as follows. Cumberland County Children and Youth Services (CYS) became involved with the family because of concerns of drug use and inadequate housing. CYS obtained legal and physical custody of Child after an October 24, 2019 shelter care hearing. Father had failed to consistently participate in drug screening and tested positive for methamphetamine use three days before the hearing. Mother had tested positive for methamphetamine use and she did not appear at the hearing. Child has special needs and severe autism. Child was adjudicated dependent and was placed with his current foster family in November 2019.

On October 7, 2020, the orphans' court held a hearing on CYS' petition seeking involuntary termination of Mother's parental rights.[1] Mother had participated in parenting programs and supervised visitation with Child

---

[1] Child's biological father voluntarily relinquished his parental rights.

through CYS since June 2020. Although visitation was hampered by the COVID-19 pandemic, Mother had virtual visits with Child two to three times per week, with the understanding that visits would move to her home once she obtained suitable housing and provided documentation that she was on the lease. At the time of the hearing, Mother had not complied with these housing requirements. Lee Marriott of CYS explained that "there [are] boxes all over the place" because "all of the contents from the storage unit got brought to this apartment" and Mother was not on the lease. (*See* N.T. Hearing, 10/07/20, at 11). The orphans' court granted Mother's request for a continuance to provide her additional time to comply with service objectives.

**B.**

The hearing reconvened on January 20, 2021, and Kim Sweager testified that CYS ended visitation service on December 2, 2020, because of an incident involving Mother and a staff member who was scheduled to supervise the visit. The supervisor sent foster parent and Child home after Mother was 15 minutes late and "when he went to his car in the front of the building . . . he was accosted verbally by [Mother's] companion, angrily, threatening that it wasn't 15 after, that he was going to call the police, that this was inappropriate." (N.T. Hearing, 1/20/21, at 7). The supervisor felt threatened and he and other staff members were unwilling to provide further visitation service to Mother. Additionally, CYS had still not approved Mother's residence for Child's

occupancy because she was not listed on the lease and the dangerous conditions persisted.

Child's foster father is a special education attorney and foster mother has an early education degree. Foster parents have an adult son with special needs who resides with them and gets along well with Child. Child has adjusted well to his placement since the fall of 2019. He appears to be happy and does not talk about Mother.

Mother explained that she undergoes regular mental health and counseling therapy and that she has 17 different diagnoses. She has many symptoms and ticks consistent with autism. Mother acknowledges the disarray of her home and that she told CYS that she would make it suitable for Child. Mother averred that she would put her belongings "in the middle of the street and burn it before I would give my child up that quickly." (N.T. Hearing, 1/20/21, at 77). However, she has not fully readied the home yet because "life happens." (*Id.* at 75). Mother indicated any substance abuse relapses that she has had, including in August 2019, are because "I have bad taste in men." (*Id.* at 82). The court delayed its ruling until after it was able to meet with Child.

On March 3, 2021, the orphans' court met with Child *in camera* and was unable to communicate with him as he "was not able to verbalize anything at all." (N.T. Hearing, 3/03/21, at 4). Mother submitted a copy of the lease, which had been amended to include her name as lessee. Mother expressed

that she had participated in reunification services and questioned the fairness of the process and timeframe within which she was expected to complete goals given the circumstances of the COVID-19 pandemic. The orphans' court then issued a decree involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S. §§ 2511(a)(5), (8) and (b) and an order changing Child's goal to adoption. Mother timely appealed. Counsel for Mother and the orphans' court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)(2),(c)(4).

On May 16, 2021, Mother's counsel filed a petition to withdraw and an **Anders** brief in which he avers the appeal is frivolous and requests permission from this Court to withdraw from representation. Mother filed a *pro se* response on June 28, 2021.

## II.

## A.

We first address counsel's petition to withdraw from representation, which must satisfy both procedural and substantive requirements. Procedurally, counsel must: 1) petition the court for leave to withdraw, stating that after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he has the right to retain private counsel or raise additional arguments that he deems worthy of the court's attention. **See Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013).

Counsel has complied with these procedural requirements. The motion to withdraw as counsel states that he has reviewed the record and concluded that the appeal is frivolous. (**See** Petition to Withdraw as Counsel, 5/16/21, at 12). Counsel certifies that he sent a copy of the **Anders** brief and petition to withdraw to Mother. Additionally, counsel's letter advises Mother of her right to retain private counsel or raise *pro se* any additional arguments she would like this Court to consider.

Regarding the substantive elements, the brief accompanying counsel's petition to withdraw must: 1) summarize the procedural history and facts of record; 2) refer to anything in the record that counsel believes arguably supports the appeal; 3) set forth counsel's conclusion that the appeal is frivolous; and 4) state counsel's reasons for concluding that the appeal is frivolous. **See Santiago**, **supra** at 361. Counsel's **Anders** brief summarizes the factual and procedural history of this case, identifies the potential issues challenging the termination of Mother's parental rights and Child's goal change, and explains the basis for his conclusion that an appeal would be frivolous. Because counsel has complied with these requirements, we "make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Id.** at 355 n.5.

**B.**

Mother challenges the orphans' court's termination of her parental rights to Child and the goal change to adoption.[2]  Mother claims the court focused on her lack of appropriate housing and did not give adequate weight to her substantial compliance with the permanency plan and her progress towards remedying the cause of Child's dependency.  According to Mother, she obtained stable housing and needed only to organize her personal property to complete the in-home phase of her parenting training.  Mother also contends the court disregarded one of the primary purposes of the Juvenile Act, *i.e.*, to preserve the unity of the family.[3]

_____

[2] The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*Interest of S.S.*, 252 A.3d 681, 685 (Pa. Super. 2021) (citations omitted).

[3] The Act provides that it "shall be interpreted and construed as . . . [t]o preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained."  42 Pa.C.S. § 6301(b)(1).

- 7 -

Section 2511 of the Adoption Act governs termination of parental rights

and requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.
>
> To affirm a termination decree, we must agree with the trial court as to any one subsection of Section 2511(a).

**Interest of S.S.**, **supra** at 685–86 (case citations omitted).

The party seeking termination must prove by clear and convincing

evidence that the parent's conduct satisfies the statutory grounds for

termination delineated in the relevant subsections of Section 2511(a). **See**

**Interest of A.M.**, 2021 WL 2697425 at *4 (Pa. Super. filed July 1, 2021).

Instantly, the orphans' court terminated Mother's rights pursuant to Sections

2511(a)(5), (8), and (b), which provide as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \*
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent

cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*    \*    \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*    \*    \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(5), (8), and (b).

"We are mindful that, when possible, the preservation of the family is the desired outcome in custody matters." **See In re K.D.**, 144 A.3d 145, 153 (Pa. Super. 2016) (citation omitted).  However, this goal of preserving the family unit cannot be elevated above all other factors when considering the best interests of the child and must be weighed in conjunction with other considerations.  **See id.**  This Court has emphasized that "a child's life cannot

be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities." *Interest of D.R.-W.*, 227 A.3d 905, 914 (Pa. Super. 2020) (citation omitted). Additionally, courts considering termination must examine whether the child is in a pre-adoptive home and whether the child shares a bond with the foster parents. *See id.* at 916.

Instantly, the orphans' court reasoned that termination of Mother's parental rights was warranted because:

> At the time of the filing of the petition, Appellant had not had suitable housing for the Child for over a year, though appropriate housing has been one of Appellant's Family Service Plan goals since November 2019. In the beginning, Appellant had unstable housing, first at a condemned apartment complex and subsequently she bounced between friends' homes. Finally, she did obtain at least superficially stable housing in the home she currently lives, though she did not wish to be on the lease (which was hers for the taking) and therefore legally and stably tied to the home until the day of the January 2021 termination hearing.

> More troubling and perhaps more to the point, Appellant's current housing is, as it has been, inappropriate and unsafe for the Child. It is significant and alarming to us that Appellant has been on direct and repeated notice of the need for her to clean up the home and keep it in that condition in order to reunify with the Child. We heard her at the January 2021 hearing that she "would have everything on the sidewalk" in order to be reunified, but that sentiment exceeds incredulity and registers instead as patently untrue. Appellant knew precisely what she had to do to stop the wheels of the termination prior to the filing of the termination petition and the same was explicitly voiced to her by this Court at the close of the October 2020 hearing. . . . By January, the home and her legal standing with the home remained the same or largely similar, which has also ultimately halted progress on her parenting goals.

> On the point of parenting, we also note our concern with Appellant's ability to regulate her emotions to the extent they affect the Child and his particular need for stability. We are

- 10 -

concerned by reports of Appellant and her "benefactor" accosting [] staff in the parking lot to the point of their retreat into the building and their termination of supervision services following the incident. . . .

The Child has been removed from Appellant's care by the court for at least 12 months and the inappropriate housing conditions, which, in part, made Appellant an unsuitable resource for Child since placement, continue to exist. With respect to the remedy-within-a-reasonable-time requirement of section 2511(a)(5), given the additional evidence that Appellant has been on explicit and cautionary notice for months to improve her housing conditions, and given that Appellant's progress in her parenting program languishes until she can do the same, we cannot reasonably express confidence that Appellant can remedy these conditions timely.

With respect to both sections, we also found that termination of parental rights would best serve the needs and welfare of the Child. [Child] had just turned seven at the time of the January 2021 hearing. With particular concern for [Child's] specific needs, including his struggles and transitions, we find his best interests lie in a safe and stable home where he can depend on living and remaining for an extended period and where his needs are paramount. We further found that the Child's welfare is at severe odds with continuing to hold him in a state of impermanency and uncertainty while we wait for Appellant to ready her home and transition into a new phase of parenting classes, which she has known she must do for some time. . . .

We commend Appellant for meeting her drug and alcohol goals, and we credit her testimony she is attending mental health counseling. On this point, however, we note our concern with Appellant's testimony regarding her prior relapses in drug use surrounding her "bad taste in men," as she termed it. . . .

. . . In summary, we find Appellant's lack of appropriate housing best characterized as the primary barrier to reunification, but much more than that. It halted her parenting services, interfered with her ability to visit with the Child in her home, and, more frightening, it signaled her lack of acceptance that it was her responsibility to care for the Child and to do what she needed to do to reunify with the Child.

- 11 -

\*    \*    \*

[Regarding the best interests analysis,] we found competent evidence of record and are convinced that it is in [Child's] best interests to terminate Appellant's parental rights and allow for him to be adopted by his foster parents.  At the time of termination, the Child had not been in Appellant's care or been in her presence outside of [supervision] for over a year and a half.  Prior to Agency involvement in August 2019, the Child was in the care of his biological father for a month.  The Child is seven, has special needs, and is happy and comfortable in his home with his foster parents and their son.

(Trial Court Opinion, 4/23/21, at 14-18) (footnotes omitted).

After review, it is evident from the record that Mother is unable and/or unwilling to meet the very basic minimum requirements necessary to appropriately care for her special needs son, who is barely communicative and has been well taken care of by his foster family since the fall of 2019.  We discern no abuse of discretion in the court's termination ruling.

**C.**

Mother also challenges the orphan's court's decision to change Child's placement goal to adoption.  Because our finding that termination was appropriate renders this issue moot, we affirm the order changing Child's permanency goal to adoption.  ***See Interest of A.M.***, ***supra*** at \*6 (stating our decision to affirm the orphans' court's termination decree necessarily renders moot its ruling changing Child's goal to adoption).

Moreover, even if we were to reach the merits of this issue, we would conclude that no relief is due.[4]

> The Juvenile Act governs proceedings to change a child's permanent placement goal. 42 Pa.C.S. §§ 6301-6375. Trial courts must apply the following analysis:
>
> Pursuant to 42 Pa.C.S. § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the trial court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

**Interest of D.R.-W.**, **supra** at 917-18 (case citations omitted).

Here, the orphans' court offered the following explanation for its decision to change Child's goal to adoption:

> We found the Agency proved by clear and convincing evidence that reunification was no longer an appropriate or feasible goal[.] . . . Appellant has known she must obtain stable and suitable housing for the Child . . . which was made explicitly clear at the close of the first continued hearing to give Appellant more time to achieve it. Nonetheless, Appellant's home remained stacked-full of items and boxes that Appellant said she would put on the street to reunify with Child, a puzzling promise given that she knew removal was the main goal we were looking to see attained after the October 2020 hearing. . . . [Child] requires a

---

[4] We review placement goal change orders for an abuse of discretion. **See Interest of D.R.-W.**, **supra** at 917.

- 13 -

home where he is prioritized and cared for and where actions supporting the same abound. Appellant has not yet shown willingness to provide that and [Child] could not wait to see if she might.

(Trial Ct. Op., at 20).

We would discern no abuse of discretion in the decision of the orphans' court. As explained in detail, Mother has demonstrated that she is not capable of parenting Child despite being repeatedly advised of her need to obtain suitable housing and her receipt of additional time to comply with CYS objectives. In addition, Child is severely autistic and his needs are being well met by his foster family with whom he has resided with since 2019. It is clear that changing the Child's placement goal to adoption is in his best interests.

Accordingly, because our independent review of the record does not reveal any non-frivolous issues for our consideration and the reasons set forth in this memorandum, we affirm the termination decree and goal change order of the orphans' court and grant counsel's petition to withdraw.

Decree affirmed. Order affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/27/2021

- 14 -